UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | DEFENDANT'S POSITION REGARDING |
| | ) | SENTENCING AND MOTION FOR |
| vs. | ) | DEPARTURE |
| | ) | |
| Barbara Ann Moulder, | ) | Criminal 20-232 (JRT/DTS) |
| | ) | |
| Defendant. | ) | |

Defendant Barbara Ann Moulder, through her counsel, Daniel L. Gerdts, Esq., respectfully submits this Position Regarding Sentencing pursuant to Local Rule 83.10(e).

CONTINUING OBJECTIONS TO THE PRESENTENCE REPORT

Para. 5: Although this paragraph accurately states that a single test during Defendant's lengthy period of time resulted in an anomalous and "unfounded" positive result for "opiates," the reference should be removed entirely based on its unfounded nature.

Para. 44: This paragraph is accurate, but incomplete. It fails to provide the Court with a complete picture of how the personal relationships and roles in the companies (and families) created an incredibly hostile working environment for Barbara Moulder

and how she was unable to leave because of the power and economic disparities in those relationships and the desire to maintain relationships with her sons. This is discussed in more detail below.

Para. 114: This paragraph refers to an addendum that was never previously submitted to the Parties until the final version of the presentence report. That addendum should be stricken from this report as it does not pertain in any way to Defendant Barbara Moulder. Even the headers on each page of the addendum make clear that it was prepared specifically for the presentence investigation of "David John Moulder." Barbara Moulder never had contact with any of these persons, and never used the tactics described. It is misleading and inaccurate.

Para. 153: The report by Dr. Marston referenced in this paragraph will be provided to the Court in a separate, sealed submission.

Para. 178: This paragraph should already have been revised to exclude the Toyota vehicle as an asset. Proof of the totaled vehicle having been towed by Mark's Towing as a "junked" vehicle already has been provided to probation.

Para. 179: This paragraph has not yet been corrected to reflect that Defendant provided tax returns showing her income of less than $20,000 per year.

Para. 180: See objection to paragraph 178 above.

## MOTION FOR DEPARTURE

Defendant Barbara Ann Moulder specifically moves the Court for a sentencing

guidelines departure from the range of imprisonment specified in the presentence report. That range was calculated to be 63 to 78 months based on a total offense level of 26 and a criminal history category of I. PSR ¶ 183. As nonetheless noted in paragraph 199 of the presentence report, "[p]ursuant to USSG §2B1.1, comment. (n.21(C)), there may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense. In such cases, a downward departure may be warranted."

The commentary gives the example of a securities fraud tactic that produces "an aggregate loss amount that is substantial but diffuse, with relatively small loss amounts suffered by a relatively large number of victims." This is precisely such a case. The presentence report nonetheless miscalculates how significant the difference in sentencing range should be when granting the appropriate departure in this case. The miscalculation results from a simple error in calculating the sentencing range from the guidelines sentencing table.

In this case, if the agreed upon restitution amount of $15,000 were substituted for the loss amount in the calculation of the sentencing guidelines range (even with no minor role adjustment), the resulting total offense level would be 12:

| | |
|---|---|
| Base Level 7 (+2 for 10 or more victims) (+2 for loss) (7+2+2) | 11 |
| Victim related adjustments (knowledge of vulnerable victims) | +4 |
| Acceptance | -3 |

The new range, applying a departure that uses the agreed-upon restitution in

place of the calculated loss, would be 10 to 16 months, based on a total offense level of 12 and a criminal history category of I. If the Court also were to agree with the role adjustment recommended by the presentence report (Defendant cannot advocate for it based on the terms of the plea agreement), the range would be 6 to 12 months.

Paragraph 199 of the presentence report correctly arrived at "a total offense level of 10, based on a 2-level loss enhancement instead of 18, and criminal history category I," but incorrectly calculated the sentencing range based on those numbers. Regardless how the Court reformulates the appropriate guidelines range, it should nevertheless grant the guidelines range departure acknowledged as appropriate in U.S.S.G. §2B1.1, comment. (n.21(C)), and recalculate the recommended range of imprisonment.

## SENTENCING CONSIDERATIONS

Even after granting the requested sentencing guidelines departure to achieve a recalculated range of somewhere between 6 to 16 months of imprisonment, the Court should not assume that a sentence within that resulting range is appropriate for Barbara Moulder – because it is *not*. Considering "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a), including Barbara' Moulder's entire life story, and the special circumstances that led to her participation in this offense, a sentence that is "sufficient, but not greater than necessary," to achieve all the purposes of sentencing would not be greater than "time-served."

Ms. Moulder pleaded guilty to conspiracy to commit fraud through her work as a telemarketer, but how she became a telemarketer, and why she did what she did, is a long story that began with her marriage at a very young age to her codefendant Anthony Moulder. That marriage produced two children, both sons, and a great deal of conflict. After the breakup and divorce, there was constant strife and an ongoing battle to maintain a relationship with her two sons. Anthony Moulder had misled her to believe that she had lost custody of her children, and that the only way to maintain a relationship with them was to agree to his terms. Indeed, the only reason she became employed as a telemarketer in the companies that Anthony Moulder owned, and that his sister Rhonda Molder managed, was because of her need to maintain a relationship with her sons.

Barbara Moulder's work for her former spouse as a telemarketer also included a great deal of conflict. She was repeatedly fired by her former sister-in-law Rhonda Moulder, before being re-employed after she begged Anthony to let her back on the payroll. She ultimately ended up working by herself out of her own apartment in Minnesota, despite the company's offices being located in Florida. As the Court no doubt will have learned from the various pre-sentence reports, Barbara's former husband and in-laws profited very handsomely from their businesses, and lived a life of relative luxury, while Barbara remained essentially destitute and living paycheck to paycheck. Without the financial support of her boyfriend, she would not have been

able to pay the rent at her modest apartments in Minnesota.

Barbara Moulder's personal story includes a history of sexual and physical abuse, multiple mental health diagnoses, and substance abuse. Her significant past trauma and diagnoses have gone largely untreated. Most of her life has been characterized by trauma. According to Dr. Marston's report, Barbara Moulder's "childhood was 'dark, disturbing, painful and was filled with nightmares.'" Her mother was physically and verbally abusive, and Barbara was repeatedly molested as a child by adult neighbors. She also was sexually assaulted by neighborhood boys as well as the man who ran the psychiatric clinic where she was a teenaged patient. She was the victim of a very violent rape in 2007 in which she was attacked, stabbed, and sexually assaulted by an unknown man in Minneapolis. She suffered a significant head injury in 2009 after being assaulted by a boyfriend.

Notwithstanding that history of trauma and mental health diagnoses, Barbara Moulder has very little criminal history, mostly consisting of traffic offenses, with no past custodial sentences. Tragically, despite the sacrifices Barbara made to stay close to her sons and maintain a relationship with them, she now suffers from the painful distinction of having outlived both of them. Her oldest son committed suicide after returning home from several deployments in the army to Afghanistan. Her second son recently died from an overdose while Ms. Moulder was on pretrial supervision waiting for this case to resolve.

And that wait has been excessive, amounting to a significant deprivation of her liberty for a very long period of time; indeed, the lack of freedom and the indignities occasioned by the conditions of her pretrial supervision are sufficient punishments already for her role in this offense. She was arrested in Florida for this offense two-and-one-half years ago (while the world was in the grip of the viral pandemic), and has been subjected to drug testing, travel restrictions, home visits by probation, and all the usual rules of pretrial supervision for that entire two-and-one-half-year period, so far. The continued drug-testing by itself (despite no evidence of use) has repeatedly required her to seek time off of work and lose valuable income.

Going forward, what Barbara Moulder needs is not a sentence of incarceration, or even more supervision, but rather the treatment and counseling deemed appropriate by a professional, along with productive work, and time to heal. She now has found fulfilling work with her new employer, which needs to continue uninterrupted. She also has become the sole caregiver to her elderly father, and she should be allowed the freedom to continue to provide that care. Above all, she is optimistic about the future – despite all of the above – and her optimism should be legitimized by this Court

Considering everything, undersigned counsel respectfully suggests that all of the statutory goals of sentencing can be met through the imposition of a sentence of "time-served."

Dated: 26 April 2023                    Respectfully submitted,

                                        DANIEL L. GERDTS, LAWYER

                                        *s/* Daniel L. Gerdts

                                        _____
                                        Daniel L. Gerdts (#207329)
                                        331 Second Avenue South, Suite 705
                                        Minneapolis, MN 55401
                                        612-800-5086
                                        daniel@danielgerdtslaw.com